UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FRANK MACIAS,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br>STATE OF NEVADA, et al.,<br><br>　　　　　　　　　Defendants. | Case No. 3:19-cv-00310-ART-CSD<br><br>ORDER |

*Pro se* Plaintiff Frank Macias ("Macias") brings this action under 42 U.S.C. § 1983. Before the Court is the Report and Recommendation ("R&R" or "Recommendation") of United States Magistrate Judge Craig Denney (ECF No. 75), recommending that that Plaintiff's motion for summary judgment (ECF No. 62) be denied and Defendants' motion for summary judgment (ECF Nos. 54, 54-1 to 54-2, 56-1 to 56-20 59-1) be granted in part and denied in part. For the reasons set forth below the Court will adopt the R&R in full.

Plaintiff also moves, unopposed, to substitute the successor or representative of deceased defendant Gregory Martin (ECF No. 80) and for appointment of counsel (ECF No. 81). For the reasons set forth below, Plaintiff's motion for appointment of counsel is granted and his motion for substitution is denied without prejudice.

**A. Legal Standard for Review of Reports and Recommendations**

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party fails to object to a magistrate judge's recommendation, the Court is not required to conduct "any review at all . . . of any issue that is not the subject of

an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003) ("De novo review of the magistrate judges' findings and recommendations is required if, but *only* if, one or both parties file objections to the findings and recommendations.") (emphasis in original); Fed. R. Civ. P. 72, Advisory Committee Notes (1983) (providing that the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

### B. History of the Case

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding *pro se* with this action pursuant to 42 U.S.C. § 1983. (First Amended Complaint (FAC), ECF No. 23-1.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (Id.) The court screened Plaintiff's FAC and allowed him with claims under the Eighth Amendment for deliberate indifference to serious medical needs against defendants Gloria Carpenter, Gregory Martin, Timothy Filson, Corey Rowley, and John Doe 1. Plaintiff alleged that on May 14, 2017, he broke his wrist and was taken to the hospital and was placed in a splint and was told he needed to return in a few days once the swelling went down so the bones could be re-set and a hard cast could be put in place. Plaintiff averred that Rowley was one of the transport officers who was present when medical staff informed Plaintiff he needed to return in a week. Plaintiff further alleged that Carpenter, Filson, and Martin were aware of Plaintiff's need to receive treatment within the prescribed time frame, but they failed to ensure he was returned to the hospital as ordered.

Plaintiff alleged that he was not timely taken back to the hospital, and by the time he was seen, the bones in his wrist healed in a malunion, causing permanent damage. Plaintiff claimed that doctors recommended surgery to correct this condition, but Filson, Martin and Carpenter refused to approve the surgery.

Defendants moved for summary judgment, arguing: (1) Crowley was only responsible for transportation and did not personally participate in the alleged violation of Plaintiff's rights; (2) Carpenter was the director of nursing and was not responsible for scheduling appointments, and does not make decisions regarding approval of surgery; (3) Plaintiff was provided with appropriate care; and (4) they are entitled to qualified immunity. (ECF No. 54.) Plaintiff also moved for summary judgment arguing that surgery was recommended for his fractured wrist, but Martin and Carpenter failed to submit a surgical referral to the Utilization Review Panel (URP), which resulted in Plaintiff being denied surgery. As a result, his wrist healed in a malunion, and this has caused him pain and permanent deformity in his wrist. (ECF No. 62.)

On March 22, 2023, Defendants provided notice to the Court that, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, Defendant Gregory Martin, passed away on or about November 12, 2022. (ECF No. 79.) Plaintiff moved to substitute party. (ECF No. 80.) Plaintiff also moved to appoint counsel. (ECF No. 81.)

**C. Legal Standard for Summary Judgment**

The legal standard governing the motion for summary judgment is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue,

3

summary judgment is not appropriate. *Anderson*, 477 U.S. at 250. "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex*, 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson*, 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish

4

an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

**D. Discussion of Motions for Summary Judgment**

**1. Facts**

On May 14, 2017, Plaintiff fell and injured his wrist while playing football at the prison. His wrist was swollen, and some deformity was noted, and he was transported to the emergency room at William Bee Ririe Hospital (WBRH). (ECF No. 56-2 at 2.) At WBRH, an x-ray showed a left wrist fracture: comminuted intraarticular fracture of the distal radius and fracture of the ulna (ulnar styloid). (ECF No. 56-3 at 3, 4.) There was minimal displacement. There was no orthopedist on call, so Plaintiff's wrist was placed in a splint, and he was referred to orthopedics. (ECF No. 56-3 at 2, 10.) The discharge instructions indicate he was to follow up with orthopedics in two days. (*Id.* at 3.)

On May 16, 2017, Martin requested an orthopedic follow up at WBRH for union of the left ulna/radial fracture. (ECF No. 56-4 at 2.) Plaintiff was seen by

Oluwaseun Akinbo M.D., at WBRH on May 22, 2017. X-rays were taken again and showed incomplete healing of the comminuted displaced fracture at the distal aspect of the radius and fracture of the ulnar styloid. (ECF No. 56-5 at 2.) The notes from his appointment state that Plaintiff was supposed to have been seen the prior week, "but that visit was cancelled because of security reasons." The splint was still in place, and Plaintiff was able to wiggle all of his fingers and sensation was intact over all of his fingers. Dr. Akinbo's assessment states: A/P: Left distal radius fracture of an unstable pattern, will benefit from surgical fixation:

-Plan to obtain pre-authorization for surgery

-Keep splint in place

-Can't perform surgery today or tomorrow because screws needed for surgery have to be shipped in

-Will perform surgery when screws are available

-Surgery discussed with patient, nature of fracture discussed with patient

(ECF No. 56-5 at 4.)

On May 31, 2017, nine days after his last appointment, Martin requested an orthopedic follow up at WBRH for non-union of the ulna and radial fracture. This was authorized that day. (ECF No. 56-6 at 2.)

Plaintiff was seen by Dr. Akinbo for a follow-up at WBRH again on June 6, 2017. Dr. Akinbo's notes state: "Patient is a prisoner, at initial evaluation, surgical management was recommended but the state denied it. He has been managed conservatively in a splint. Today, he reports better pain control." (ECF No. 56-7 at 2, emphasis added.) He was advised to follow-up in four weeks for re-evaluation with x-rays, and his cast was to be removed prior to the x-ray. He was prescribed Tramadol for pain control. He anticipated Plaintiff would

transition to a "cock-up wrist splint" at the follow-up assuming the x-rays were acceptable. (*Id.*)

That same day, Martin requested an orthopedic follow up at WBRH in four to five weeks, which was authorized on June 7, 2017. (ECF No. 56-8 at 2.)

Plaintiff saw Dr. Akinbo at WBRH again on July 6, 2017. Dr. Akinbo noted Plaintiff was in a cast. The x-ray revealed an incompletely healed distal radius fracture with mild volar subluxation and loss of inclination. Dr. Akinbo described his condition as "malaligned." Plaintiff's cast was removed, and he was transitioned to the "cock-up wrist splint," and he was instructed to follow up in six weeks for re-evaluation with x-rays. (ECF No. 56-9 at 2-5.)

On July 10, 2017, Martin requested an orthopedic follow-up at WBRH regarding the left distal radius nonunion/malaligned fracture, which was approved. (ECF No. 56-10 at 2.)

Plaintiff saw Dr. Glenn Miller at WBRH for a follow-up on August 31, 2017. He reported persistent pain and stiffness in the left wrist. A deformity was noted on the left wrist, as well as limited range of motion. Dr. Miller's impression was malunion of the distal radius with secondary posttraumatic degenerative joint disease of the radial carpal joint. The plan at that time was to get Plaintiff out of the splint and use an Ace bandage for support and to have him do range of motion exercises. Dr. Miller noted that it is possible the wrist will go on to experience further degenerative changes with more complaints of pain with use over the next several months. He was instructed to follow up in three months with an x-ray. Dr. Miller recommended considering radiocarpal fusion with dorsal synthesis plating and grafting. (ECF No. 56-11 at 4-5.)

On October 5, 2017, Martin requested an orthopedic follow up at WBRH for the left displaced/non-union of the painful radius/ulna fracture, which was authorized. (ECF No. 56-12 at 2.)

1       Plaintiff was next seen at WBRH on October 11, 2017, by Dr. Gary Zeluff. Dr. Zeluff noted that Plaintiff was seen initially on the date of his injury on May 14, and then was seen eight days later by Dr. Oluwaseun (Akinbo) since orthopedics was not available (on the date he initially presented to the hospital). Dr. Zeluff indicated that when Plaintiff saw Dr. Akinbo, it was felt that the injury should be reduced and fixed with screws, "however the proper equipment was also not available and therefore he was treated conservatively." He was not seen by orthopedics until August 31, 2017, by Dr. Miller, who recognized this as being a malunion.

      Plaintiff had also started to develop signs of early degenerative arthritis. Dr. Miller discussed with Plaintiff the possibility that this may ultimately require a wrist fusion. (ECF No. 56-13 at 2.)

      On examination, Plaintiff had minimal visible offset, but palpable displacement of the carpus in the volar direction relative to the palpable distal radius. He also had limitation in range of motion. Dr. Zeluff confirmed the prior x-ray revealed the fracture healed in a malunion, and there was evidence of posttraumatic arthritis. Dr. Zeluff's assessment was that Plaintiff had posttraumatic arthritis in the left wrist secondary to the malunion distal radius fracture. No further diagnostics were required at that point.

      Dr. Zeluff advised Plaintiff that his best option at that point was to continue using the wrist brace, to use an Ace bandage under the brace to give additional cushioning, and to continue working on the gradual range of motion exercises. He further recommended that Plaintiff be allowed to use ibuprofen, from 400 mg to 800 mg up to three times a day as needed basis, with a maximum dose of 2400 mg per day. Ultimately, Dr. Zeluff believed Plaintiff would continue to develop degenerative changes of the wrist for which wrist fusion with a stabilizing plate and bone graft would be recommended (as discussed by Dr.

Miller). Dr. Zeluff agreed this would probably be required at some point, but he did not recommend the procedure at that time. (*Id.* at 3.)

An individual named Bryan requested a referral to Dr. Wulff for left wrist pain on August 22, 2018, which was approved on August 28, 2018. (ECF No. 56-14 at 2.) Plaintiff complained of left wrist pain on February 28, 2019, and was ordered ibuprofen. (ECF No. 56-16 at 2.) There is a document dated March 15, 2019, indicating Plaintiff refused an appointment with Dr. Wulff. (ECF No. 56-15 at 2.) An orthopedic consultation was requested again on May 15, 2019. (ECF No. 56-16 at 3; ECF No. 56-17 at 2.)

Plaintiff saw Dr. Walls on June 10, 2019. Dr. Walls discussed surgery or leaving his wrist as is, and Plaintiff again elected to leave it as is. (ECF No. 56-18 at 2.) Plaintiff was then seen on September 21, 2021, for a follow-up for his left wrist. He cancelled the appointment stating that he did not request it, and he did not require the provider's intervention. He said the surgery was denied so he no longer needed medical for this condition. (ECF No. 56-19 at 2; ECF No. 56-20.)

**2. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)). A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992),

9

rev'd on other grounds, *WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

### 3. Rowley and Carpenter

Judge Denney recommends that summary judgment be granted in favor of defendants Rowley and Carpenter based on a lack of personal participation. "42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted). Judge Denney found that Rowley was not in charge of scheduling

inmate medical appointments and has no say in when and where an inmate is seen for medical treatment. Judge Denney found that Carpenter did not have involvement in scheduling Plaintiff's appointment at WBRH. Nor was she involved in the approval or denial of surgery for Plaintiff. Carpenter had no involvement in Plaintiff's care.

Neither party objects to Judge Denney's recommendation that summary judgment be granted in favor of Rowley and Carpenter. Because the Court finds that Judge Denney did not clearly err, the Court adopts Judge Denney's recommendation and grants summary judgment in favor of Rowley and Carpenter.[1]

**4. Martin**

The Court agrees with Judge Denney that there is a genuine dispute of fact as to whether Martin was deliberately indifferent. While Martin argues that Dr. Akinbo did not order surgery, the records from Plaintiff's May 22, 2017, visit clearly indicate that surgery was recommended at that point and that pre-authorization was to be obtained. Dr. Akinbo indicated he could not do the surgery that day or the following day, because the screws needed for the surgery had to be shipped in. Dr. Akinbo said he would perform the surgery when the screws were available.

Despite a clear recommendation for Plaintiff to have surgery at that point (when the hardware became available), there is no record that Martin made a referral to the URP to authorize the surgery. When Plaintiff was next seen at WBRH on June 6, 2022, he believed he was going there to get surgery, but Dr. Akinbo said the State had denied the surgery, so Plaintiff was being treated conservatively. It is unclear who from the State denied the surgery, but according to Defendants' records, the URP makes decisions to approve or deny surgery.

---

[1] Judge Denney also recommends that John Doe 1 be dismissed without prejudice because Plaintiff did not timely seek to substitute a defendant in the place of John Doe 1. The Court adopts the recommendation.

11

The URP makes those decisions when it is given a request from an inmate's provider, which in this case, would have been Martin.

The court has declarations from Carpenter and Rowley, but there is no declaration from Martin indicating what he did in response to Dr. Akinbo's recommendation for surgery, i.e., whether he sent a referral to the URP, and if not, why? And if so, what was the response?

Nor does Martin provide any explanation regarding Dr. Akinbo's statement that the surgery had been denied by the State, or whether Dr. Akinbo was mistaken. Plaintiff similarly provides no evidence in this regard. If a jury concludes that Martin received Dr. Akinbo's surgical recommendation, but he failed to submit a referral to the URP, the jury could conclude that Martin knew of and disregarded a risk to Plaintiff's health (malunion leading to deformity in the wrist and pain). On the other hand, it is possible that a jury could determine that Martin did not proceed with a referral to the URP because he was awaiting to hear from the hospital regarding the availability of the screws before proceeding with the referral, or that he did process the referral, but it was the URP, and not Martin, that was responsible for denial of the surgery.

The Court agrees with Judge Denney that without a resolution of these facts, the court cannot determine that either side is entitled to summary judgment as a matter of law. Therefore, the Court overrules Plaintiff's objection, which argues that there is no dispute of material fact as to Martin. (ECF No. 76.) Bth Defendants' and Plaintiff's motions for summary judgment are denied as to Martin.

**5. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of*

*Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021)(citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Taking the facts in the light most favorable to Plaintiff, it is possible that Martin was deliberately indifferent to Plaintiff's serious medical need. Moreover, it was clearly established that a denial of medical treatment can violate the constitution. *See Stewart v. Aranas*, 32 F.4th 1192, 1195 (9th Cir. 2022) (citing *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014)). Therefore, Martin is not entitled to qualified immunity.

**E. Substitution**

On March 22, 2023, Defendants provided notice to the Court that, pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, Defendant, Gregory Martin, passed away on or about November 12, 2022. (ECF No. 79.) Defendants request that this action be calendared for proper substitution in and on behalf of Defendant, and if not done so within the time period prescribed, the matter be dismissed against Defendant. (*Id.*) Plaintiff moved to substitute party on May 26, 2023. (ECF No. 80.)

The claim against Martin is not extinguished by his death. Generally, the law of the forum state determines whether a section 1983 action survives or is extinguished upon the death of a party. *See* 42 U.S.C. § 1988(a); *see also Robertson v. Wegmann*, 436 U.S. 584, 588-89 (1978). Nevada law provides: "Except as otherwise provided in this section, no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's executor or administrator." NRS 41.100(1). "In an action against an executor or administrator, any damages may be awarded which would have been recovered against the decedent if the decedent had lived, except damages awardable under NRS 42.005 or 42.010 or other damages imposed primarily for the sake of example or to punish the defendant." NRS 41.100(2).

Federal Rule of Civil Procedure 25 governs a motion for substitution and a notice of death. The Rule provides:

> (a) Death
> (1) Substitution if the Claim is Not Extinguished. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
> ...
> (3) Service. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

Fed. R. Civ. P. 25(a).

Rule 25(a) requires two affirmative steps to trigger the running of a 90–day period before a claim against a deceased party is dismissed. *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir.1994). "First, a party must formally suggest the death of the party upon the record." *Id.* (citing *Anderson v. Aurotek*, 774 F.2d 927, 931 (9th Cir. 1985); *Grandbouche v. Lovell*, 913 F.2d 835 (10th Cir. 1990)). "Second, the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *Barlow*, 39 F.3d at 233; Fed. R. Civ. P. 25(a).

Defense counsel has attempted to trigger the running of that 90-day deadline, but to date the steps taken have failed to do so. Its notice does not provide information that would allow Plaintiff to determine the identity of the personal representative of defendant Martin. It is unknown whether any estate has been created for (or personal representative named) defendant Martin.

There is very little case law regarding which party is to determine whether a personal representative for a deceased person has been identified. However, a District of Nevada decision by District Judge Gloria Navarro in the matter of *In*

14

*re MGM Mirage Sec. Litig.*, 282 F.R.D. 600 (D. Nev. June 14, 2012) does recognize that while neither Rule 25 nor the Ninth Circuit have required a defendant to identify a successor in the suggestion of death, some district courts within the Ninth Circuit have required a defendant who has filed a suggestion of death to undertake reasonable efforts to discover the identity of a successor or representative. *Id.* at 603. (citations omitted). In that case, Judge Navarro directed the defendants to undertake an investigation regarding the status of the decedent's estate, and if counsel were able to obtain information about the representative of the estate or appropriate successor, the notice of suggestion of death was to be served on the proper non-party. *Id.* If counsel was unable to obtain the information, a declaration was to be filed describing efforts made to comply with the order. *Id.*

Like Judge Navarro's decision in the *MGM Mirage Securities Litigation*, the court directs the AG's Office to undertake efforts to ascertain whether there is an estate for defendant Martin. The court does not envision how an inmate like Plaintiff could reasonably undertake that research. While Judge Navarro had concluded that the plaintiff in that case was not relieved of also making reasonable inquiry regarding the appropriate successor, the Court does not impose a similar obligation on the *pro se*, inmate Plaintiff in this case, as he would have limited or no resources to discover this information Thus, the AG shall make a reasonable investigation into the status of defendant Martin's estate and if a representative of the estate or successor is discovered shall serve the suggestion of death in accordance with Rules 4 and 25 on the representative or successor. The AG shall, within 30 days of the date of this order, file proof of service reflecting proper service of death on the representative or successor of defendant Martin or, if counsel is unable to effect such service, counsel shall file a declaration concerning all efforts to comply with this Order. This procedure is

consistent with the approach to ascertaining whether an estate has been filed as employed by Judge Navarro in the *MGM Securities* Litigation.

Because the motion to substitute must be served on nonparties as provided in Rule 4, *In re MGM Mirage Sec. Litig.*, 282 F.R.D. at 604, (D. Nev. 2012), Plaintiff's motion to substitute is denied without prejudice.

### F. Appointment of Counsel

There is no constitutional right to appointed counsel in a § 1983 action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), opinion reinstated in pertinent part, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc). The provision in 28 U.S.C. §1915(e)(1) gives the court discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see, e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1998) (en banc.) While the decision to request counsel lies within the discretion of the district court, the court may exercise this discretion to request counsel only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

A finding of "exceptional circumstances" requires the court to evaluate (1) the plaintiff's likelihood of success on the merits and (2) the Plaintiff's ability to articulate his claims pro se considering the complexity of the legal issues involved. *Id.* (quoting *Wilborn*, 789 F.2d at 1331) (internal quotation marks omitted). Neither factor is dispositive, and both factors must be considered before a court decides. *Id.* The difficulties every litigant faces when proceeding *pro se* does not qualify as an exceptional circumstance. *Wood v. Housewright*, 900 F. 2d 1332, 1335-36 (9th Cir. 1990). While almost any *pro se* litigant would benefit from the assistance of competent counsel, such a benefit does not rise to the level of "exceptional circumstances." *Rand*, 113 F.3d at 1525. Rather, the plaintiff must demonstrate that he is unable to articulate his claims due to their complexity. *Id.*

1 Given the posture of this case at this juncture, the Court finds that exceptional circumstances warrant appointment of counsel. *Terrell*, 935 F.2d at 1017. Specifically, given Macias defeated Defendants' motion for summary judgment, Macias has a likelihood of success on the merits. Additionally, as this case will now proceed to trial the Court finds that particularly with the death of Martin, the complexity of pursuing this case *pro se* increase exponentially. The Court also considers the complexity of the legal issues involved—such as the potential need for expert witnesses. Accordingly, exceptional circumstances exist here.

This case is referred to the *Pro Bono* Program adopted in the Amended General Order 2019-07 for the purpose of identifying counsel willing to be appointed as *pro bono* counsel for Macias. By referring this case to the Program, the Court is not expressing an opinion on the merits of the case.

IT IS THEREFORE ORDERED that Magistrate Judge Denney's Report and Recommendation (ECF No. 75) is accepted and adopted in full;

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment (ECF No. 62) be DENIED;

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (ECF No. 54) is GRANTED in part and DENIED in part consistent with this Order. Specifically Defendants' motion for summary judgment (ECF No. 54) is GRANTED as to Rowley and Carpenter, but DENIED as to Martin;

IT IS FURTHER ORDERED that John Doe 1 is DISMISSED WITHOUT PREJUDICE due to Plaintiff's failure to substitute a defendant in his place;

IT IS FURTHER ORDERED that Plaintiff's motion to substitute the successor or representative of deceased defendant Gregory Martin (ECF No. 80) is DENIED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Plaintiff's motion for appointment of counsel (ECF No. 81) is GRANTED. This case is referred to the Pro Bono Program adopted in the Amended General Order 2019-07 for the purpose of identifying counsel willing to be appointed as pro bono counsel for Macias.

IT IS FURTHER ORDERED that the State of Nevada Attorney General shall make a reasonable investigation into the status of defendant Martin's estate and if a representative of the estate or successor is discovered shall serve the suggestion of death in accordance with Rules 4 and 25 on the representative or successor. The State of Nevada Attorney General shall, within 30 days of the date of this order, file proof of service reflecting proper service of death on the representative or successor of defendant Martin or, if counsel is unable to effect such service, counsel shall file a declaration concerning all efforts to comply with this Order.

DATED THIS 12th Day of July 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE